UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| TRISHA G., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN J. O'MALLEY, Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br> Case No. 2:22-cv-00762 <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Trisha G.[1] filed this action for judicial review[2] of the Commissioner of the Social Security Administration's decision denying her applications for disability insurance benefits under Title II[3] and supplemental security income under Title XVI of the Social Security Act.[4] The Administrative Law Judge ("ALJ") denied Ms. G.'s applications, finding she did not qualify as disabled.[5] Ms. G. argues the ALJ erred by failing to consider whether she had good reasons for failing to follow her treatment plan.[6] The court[7] has carefully reviewed the record

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including social security cases, the court refers to Plaintiff by her first name and last initial only.

[2] (*See* Compl., Doc. No. 2; Opening Br., Doc. No. 13.)

[3] 42 U.S.C. §§ 401–434.

[4] *Id.* §§ 1381–1385.

[5] (Certified Tr. of Admin. R. ("Tr.") 10–28, Doc. No. 10.)

[6] (Opening Br. 7–8, Doc. No. 13.)

[7] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 8.)

1

and the parties' briefs.[8]  Because the ALJ did not consider all the *Frey*[9] factors in assessing Ms. G.'s failure to follow prescribed treatment, the Commissioner's determination is reversed and remanded.

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of a final decision of the Commissioner.  This court reviews the ALJ's decision and the whole record to determine if substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards.[10]  "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[11]

"[A]n ALJ's factual findings . . . shall be conclusive if supported by substantial evidence."[12]  Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[13]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14]  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative

---

[8] The appeal is determined on the written memoranda, as oral argument is unnecessary.  *See* DUCivR 7-1(g).

[9] *See Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987).

[10] 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[11] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

[12] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted).

[13] *Id.* at 1154 (internal quotation marks omitted).

[14] *Id.* (internal quotation marks omitted).

agency's findings from being supported by substantial evidence."[15] The court may not substitute its judgment for that of the ALJ nor may it reweigh the evidence.[16]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which is expected to result in death or last for at least twelve consecutive months.[17] An individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[18]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) she has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) she has the residual functional capacity to perform past relevant work; and

5) she has the residual functional capacity to perform other work, considering her age, education, and work experience.[19]

---

[15] *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

[16] *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[17] 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A).

[18] *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

[19] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The claimant has the burden, in the first four steps, of establishing disability.[20] At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work.[21]

## PROCEDURAL HISTORY

In August 2020, Ms. G. applied for disability insurance benefits and supplemental security income.[22] She alleged disability beginning July 2013.[23] After an administrative hearing,[24] the ALJ issued a decision on April 19, 2022, finding Ms. G. not disabled and denying benefits.[25] At step two of the sequential evaluation, the ALJ found Ms. G. had the severe impairments of hydrocephalus, cervical degenerative disc disease (post-fusion), diabetes, headaches, and bilateral knee osteoarthritis.[26] At step three, the ALJ found these impairments did not meet or medically equal an impairment listing.[27]

The ALJ found Ms. G. had the residual functional capacity ("RFC")[28] to perform light work, with significant additional exertional and functional limitations, including a limitation that

---

[20] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[21] *Id.*

[22] (*See* Tr. 226–36.)

[23] (Tr. 12.)

[24] (*See* Tr. 33–74.)

[25] (Tr. 10–28.)

[26] (Tr. 15.)

[27] (*Id.*)

[28] A claimant's RFC is the most she can do in a work setting considering her limitations. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* SSR 96-8p, 1996 SSR LEXIS 5, at *1–2 (July 2, 1996). In assessing RFC, the ALJ considers all medically determinable impairments and all

4

any work be simple and unskilled.[29] Based on this RFC, the ALJ found Ms. G. unable to perform her past relevant work.[30] But after considering the testimony of a vocational expert, the ALJ found Ms. G. capable of performing other jobs existing in significant numbers in the national economy.[31] Therefore, the ALJ found Ms. G. not disabled and denied her claims.[32]

The Appeals Council denied Ms. G.'s request for review,[33] making the ALJ's decision final for purposes of judicial review.

## DISCUSSION

Ms. G. raises one claim of error. She argues the ALJ erred by neglecting to consider whether she had good reasons for failing to follow her prescribed treatment (additional brain shunts or drains) for hydrocephaly.[34] The Commissioner contends Ms. G. misapprehends the social security rules. Specifically, the Commissioner contends Social Security Ruling 18-3p[35] makes clear that the ALJ need only apply the rule regarding the need to follow prescribed

---

relevant medical and other evidence in the record. *See* 20 C.F.R. §§ 404.1545(a)(2)–(3), 416.945(a)(2)–(3).

[29] (*See* Tr. 16.)

[30] (Tr. 26.)

[31] (Tr. 27–28.)

[32] (Tr. 28.)

[33] (Tr. 1–6.)

[34] (Opening Br. 7–8, Doc. No. 13.)

[35] Social Security Ruling 18-3p provides guidance on how the Social Security Administration applies its policy on failure to follow prescribed treatments. *See* SSR 18-3p, 2018 SSR LEXIS 1 (Oct. 2, 2018).

treatment[36] when the individual is otherwise entitled to disability benefits.[37] Although the Commissioner is correct that Social Security Ruling 18-3p does not apply to this case, under *Allred v. Commissioner of the Social Security Administration*,[38] it is apparent the ALJ legally erred by failing to consider all the required factors when assessing Ms. G.'s treatment noncompliance. Because *Allred* makes clear that ALJs must consider the *Frey* factors[39] when assessing the impact of a claimant's noncompliance—something the ALJ here failed to do—the Commissioner's determination must be reversed.

      The Tenth Circuit's decision in *Allred* is very much on point. In *Allred*, the claimant argued the ALJ should have applied Social Security Ruling 18-3p because the ALJ assessed her compliance with prescribed treatment.[40] The court rejected this argument, finding, by its own terms, Social Security Ruling 18-3p applies only where an ALJ finds the claimant is otherwise entitled to benefits.[41] This finding is consistent with the Commissioner's position:[42] the considerations in Social Security Ruling 18-3p would only apply if Ms. G. had been found disabled, but the ALJ found Ms. G. not disabled.

---

[36] 20 C.F.R. §§ 404.1530, 416.930.

[37] (Answer Br. 5, Doc. No. 19.)

[38] No. 22-4044, 2023 U.S. App. LEXIS 9544 (10th Cir. Apr. 21, 2023) (unpublished).

[39] In *Frey*, the Tenth Circuit identified four factors ALJs must consider when "reviewing the impact of a claimant's failure to undertake treatment" on a disability determination: (1) whether the treatment would restore the claimant's ability to work, (2) whether it was prescribed, (3) whether the claimant refused the treatment, and (4) whether the refusal was justifiable. 816 F.2d at 517.

[40] 2023 U.S. App. LEXIS 9544, at *8.

[41] *Id.*

[42] (Answer Br. 5, Doc. No. 19.)

However, this is not the end of the inquiry because *Allred* undermines the Commissioner's arguments supporting the ALJ's assessment of Ms. G.'s treatment noncompliance. Relying on *Qualls v. Apfel*,[43] the Commissioner argues the ALJ properly evaluated Ms. G.'s noncompliance.[44] At first blush, this makes sense: in *Qualls*, the Tenth Circuit held ALJs need not consider the *Frey* factors when assessing how treatment noncompliance affects subjective symptoms—unless the ALJ denies benefits due to the noncompliance.[45] But in *Allred*, the court retreated from this position, recognizing conflicts in how the Tenth Circuit had addressed the issue.[46] Specifically, the *Allred* court clarified that *Qualls* does not control—*Thompson v. Sullivan*[47] does.[48]

In *Thompson*,[49] the Tenth Circuit held ALJs "must consider the *Frey* factors before discounting the credibility of a claimant's symptom allegations based on a failure to pursue treatment or take medication."[50] The *Allred* court concluded the holding in *Thompson* controls, as *Thompson* was decided before *Qualls*.[51] Finding the ALJ did not sufficiently consider the

---

[43] 206 F.3d 1368 (10th Cir. 2000).

[44] (Answer Br. 6 & n.4, Doc. No. 19.)

[45] *Qualls*, 206 F.3d at 1372–73.

[46] *Allred*, 2023 U.S. App. LEXIS 9544, at *9.

[47] 987 F.2d 1482 (10th Cir. 1993).

[48] 2023 U.S. App. LEXIS 9544, at *9.

[49] 987 F.2d 1482 (10th Cir. 1993).

[50] *Allred*, 2023 U.S. App. LEXIS 9544, at *9 (citing *Thompson*, 987 F.2d at 1490). The *Allred* court recognized that although "credibility" is no longer used by the Social Security Administration, ALJs still evaluate subjective symptoms. *Id.* at *9 n.2 (citing SSR 16-3p, 2016 SSR LEXIS 4, at *3 (Mar. 16, 2016)).

[51] *Id.* at *9–10.

*Frey* factors—specifically, the "possible reasons behind [the claimant's] intermittent noncompliance" with treatment—the *Allred* court remanded the case.[52] In other words, the Commissioner's reliance on *Qualls* is misplaced.

Similar to *Allred*, this case must be remanded. Under *Frey*, ALJs must consider four factors when "reviewing the impact of a claimant's failure to undertake treatment" on a disability determination: (1) whether the treatment would restore the claimant's ability to work, (2) whether it was prescribed, (3) whether the claimant refused the treatment, and (4) whether the refusal was justifiable.[53] The ALJ in this case did not fully consider whether Ms. G.'s treatment refusal was justifiable. There is no question the ALJ in this case relied heavily on Ms. G.'s noncompliance with treatment recommendations. No fewer than nine times, the ALJ noted Ms. G.'s reluctance or unwillingness to have an additional surgery to place a brain shunt or drain.[54] The ALJ concluded his summary of Ms. G.'s noncompliance by noting:

> For nearly two years, she refused her neurosurgeon's recommendations to have another VF shunt placed. She also refused temporary or less invasive treatment recommendations. Now when seen by a different provider, she directly attributed virtually all of her allegedly disabling symptoms to her hydrocephalus, which she has essentially refused to treat.
>
> I recognize that VF shunts are extremely invasive. Further, she has required multiple surgeries and placements, which she has expressed frustration over. However, based on her almost complete refusal to entertain any treatment

---

[52] *Id.* at *10–11.

[53] 816 F.2d at 517.

[54] (*See, e.g.*, Tr. 18 (noting Ms. G. "wanted to try to get by without a shunt"); Tr. 18 ("[S]he preferred not to have another shunt."); Tr. 19 (noting Ms. G. was reluctant to have her shunt replaced); Tr. 19 (noting Ms. G.'s refusal to have emergency neurosurgery); Tr. 19 (noting Ms. G.'s refusal to have surgery that night or in the near future); Tr. 19 (noting Ms. G.'s ongoing resistance to another shunt); Tr. 19 (noting Ms. G.'s refusal to have an external ventriculostomy drain placed or other surgical interventions); Tr. 20 (noting Ms. G. again declined surgical intervention); Tr. 20 (noting Ms. G.'s continued resistance to shunt placement).)

recommendations or rule out other etiologies, it is reasonable to assume that the claimant's symptoms may not be as limiting as the claimant has alleged.[55]

While the ALJ acknowledged Ms. G. had some difficulty with prior shunts, such as a methicillin-resistant Staphylococcus aureaus (MRSA) infection,[56] it is not apparent he assessed whether Ms. G.'s treatment noncompliance was justifiable in light of her full history with brain shunts. Ms. G. had her first brain shunt placed in 1996 or 1997.[57] During the following seven years, she had numerous brain surgeries for purposes of shunt replacements or revisions—with number thirteen in 2003.[58] Following this, up to 2017, Ms. G. had another eight brain shunt surgeries.[59] In 2017, her last brain shunt (her twenty-first) was removed, due to an abdominal MRSA infection.[60] According to Ms. G., most of the shunt-related surgeries would require her to stay in the hospital for a week or more[61] and, some years, she had multiple shunt surgeries.[62]

---

[55] (Tr. 21 (internal citations omitted).)

[56] (Tr. 20.) The ALJ cited page 494 of the administrative record when referencing the MRSA infection. (*Id.*) The MRSA infection is referenced throughout Ms. G.'s records. (*See, e.g.*, Tr. 526 (noting treatment for abdominal abscesses, including two-week hospitalization); Tr. 709 ("She developed a MRSA infection of her most recent shunt in July 2017 [and] ultimately had it removed at that time.").)

[57] (Tr. 481, 982.)

[58] (Tr. 982.)

[59] (*See* Tr. 895.)

[60] (Tr. 894–95.) The record also contains references to other shunt-related problems. (*See* Tr. 484 (noting Ms. G. had "multiple abdominal problems with shunt surgery"); Tr. 895 (noting Ms. G. was resistant to another brain shunt "due to the repeated failure of similar treatment").)

[61] (Tr. 58.)

[62] (Tr. 59.)

After her return from the hospital, she would "be down" for a couple months, unable to work, and receiving "home health" assistance.[63]

Like *Allred*, this case must be remanded so the ALJ can consider this and any other record evidence under the *Frey* factors. For instance, the ALJ must assess in the first instance whether Ms. G.'s twenty-one prior shunt surgeries, and the complications attendant to them, justifies her refusal to try the same procedure again. The Commissioner argues that because the ALJ provided other reasons for finding Ms. G.'s symptoms inconsistent with the record, his decision should stand.[64] But as noted above, the ALJ heavily relied on Ms. G.'s treatment noncompliance. And *Allred* supports a remand in these circumstances. In *Allred*, the Commissioner contended the mixed evidence regarding the basis for the claimant's noncompliance prevented the need for a remand, despite the ALJ's incomplete analysis of the *Frey* factors.[65] But the Tenth Circuit found it was precisely the mixed evidence that necessitated a remand, because the "ALJ must resolve the conflicts in evidence."[66]

In this case, it may well be that a consideration of the relevant evidence under the *Frey* factors would lead the ALJ to make precisely the same findings with regard to Ms. G.'s subjective claims and symptoms. But the ALJ must undertake this analysis, as it is the ALJ (not the court) who must weigh the evidence in the first instance.[67]

---

[63] (*Id.*)

[64] (Answer Br. 7–9, Doc. No. 19.)

[65] 2023 U.S. App. LEXIS 9544, at *10.

[66] *Id.* at *10–11.

[67] *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) (noting post hoc rationalization would require the court to "overstep [its] institutional role and usurp essential functions committed in the first instance to the administrative process"); *cf. Langley*, 373 F.3d at 1118.

## CONCLUSION

Where the ALJ neglected to assess Ms. G.'s reasons for failing to engage in additional treatment for her hydrocephaly under the *Frey* factors, this case is REVERSED and REMANDED for further administrative proceedings.

DATED this 9th day of January, 2024.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge